## THE ARCIDUCA STEFANO.

### THE JAMES J. McGUIRL.

(Circuit Court of Appeals, Second Circuit. July 15, 1914.)

#### No. 222.

COLLISION (§ 95*)—TOW AND STEAMSHIP MEETING—FAULT OF TUG.

A collision between a barge in tow alongside of a tug and a meeting steamship in Buttermilk Channel *held* due to the fault of the tug in keeping in too close to the steamship and stopping and backing when she should have gone ahead in conformity to the signals.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a final decree of the District Court of the United States for the Southern District of New York, entered on October 16, 1913, holding the steam tug James J. McGuirl solely responsible for the collision between the steamship Arciduca Stefano and a barge in tow of the McGuirl, which occurred November 3, 1911, in Buttermilk Channel in the port of New York.

Carpenter & Park, of New York City, for appellant.

James J. Macklin, of New York City (Lorenzo Ullo, of New York City, of counsel), for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This libel was filed by the Staples Brick Company as owner of the brick barge Mary L. Nickerson and of the cargo of brick laden thereon, in tow of the steam tug McGuirl against the steamship Stefano and the steamship brought in the tugboat by petition under the Fifty-Ninth rule. The steamship Stefano was an Australian steamship 340 feet in length and 46 feet beam and was laden with 3,000 tons of cargo and drawing about 21 feet. The barge Nickerson was about 100 feet in length and 29 feet beam and drawing from 10 to 11 feet of water. She was made fast to the port side of the steamtug McGuirl. There were two tugboats made fast to the Stefano, one upon her starboard bow and one upon her port stern. The collision occurred in clear weather between 2 and 3 o'clock in the afternoon. The court below dismissed the libel against the Stefano, and decreed that the libelant recover against the steam tug the sum of $2,262.19, with interest and costs, making in all the sum of $2,544.30.

The testimony shows that the Stefano left the Bush Docks, Forty-Fifth street, South Brooklyn, about 2 p. m. on November 3d, intending to proceed north up the Buttermilk Channel to the Refinery wharf in Long Island City, with the tugs made fast to her in the manner above stated. The barge McGuirl left pier 29, South Brooklyn, intending to proceed down the Buttermilk Channel around Red Hook to the foot of

Twenty-Fifth Street, Brooklyn. While rounding the Red Hook Point the Stefano sighted the tug and tow about 1,000 feet distant coming down the Buttermilk Channel somewhere beyond the middle of the channel towards Governors Island. As soon as sighted, the steamship blew one whistle, which was answered, and kept rounding the Red Hook Point, hugging the Brooklyn shore close to the docks, and changed her engines from half speed to slow. The tug and tow did not change their relative position to the steamer, and kept coming towards the Stefano. The latter then blew a second signal of one whistle which was also answered. But the tug and tow continued to approach the steamship. Thereupon the Stefano backed and reversed and dropped anchor, not daring to go further toward the Brooklyn shore to avoid the collision. Although the steamship had nearly stopped she struck the barge amidship the port side, which at that time laid across the channel.

The reason why the tug and tow were not discovered by the Stefano earlier was that the steamship was at the time turning Red Hook. At that time the tug and tow were in the middle of the channel two or three degrees on the port bow of the steamship. The testimony is substantially uncontroverted that the two vessels sighted each other at a sufficient distance to have taken the requisite precautions for passing safely on their respective courses. The Stefano at the time the vessels came in sight was making a speed of about five knots an hour, or half speed, and the McGuirl was making about four knots an hour. The Stefano was about 200 feet from shore and was acting under port helm and gave the first signal, one whistle, indicating that the vessels should pass the port side of each other, and that the tug should port his helm and go to starboard.

The testimony makes it plain that in the position in which the boats were approaching each other if the signal had been observed the boats would have safely passed port to port.

The libelant alleges that after the exchange of signals of one whistle the wheel of the steam tug was ported in conformity with the signal, but that the steamship continued on its course and when nearing the steam tug and barge suddenly sheered to port occasioning the collision.

The steamship alleges that after the exchange of signals the steam tug did not turn to starboard in accordance with the signals, and that the tug and tow kept right ahead of the steamer. The chief allegation of fault made by the steamship against the tug is that he did not turn to starboard "so as to pass each other on the port side of each other."

The allegation made by the steam tug against the steamship is that the steamship after the exchange of the signals of one whistle kept on her course and did not sheer to starboard, as indicated by her single blast of one whistle.

Whatever difficulties are presented in this case grow out of the uncertainties as to the facts and the somewhat conflicting testimony we find in the record.

The court below was of opinion that at the time when the vessels first sighted each other they were on parallel and not on crossing courses, and the court also found that the boats were not approaching head and head. Our examination of the testimony has convinced us

that the conclusion at which the court arrived on these two important points was justified.

That the libelant is entitled to damages is not disputed. The question is whether recovery is to be had from the steamship or from the steam tug or from both.

At the time these vessels sighted each other the Stefano had the McGuirl on her starboard bow and did not port her helm more than enough to round Red Hook until in extremis when she ported and threw out her starboard anchor and ordered the starboard tug to back. And at no time had she starboarded out of her course and into the waters of the McGuirl. We fail to find that the Stefano was in fault in what she did. Counsel claim that she was at fault in that she did not put to port after she gave the first signal of one whistle. This it would have been her duty to have done if the boats had been approaching head on. The America, 92 U. S. 432, 23 L. Ed. 724. But at the time the first signal was given they were not approaching head on, and the rule relied upon was not applicable to the situation as it then existed.

The master of the McGuirl testified that when within about 200 feet of the steamship he stopped his boat and "set her backing, which I continued until where the collision occurred." When asked how far back he went, he said:

"I didn't go astern at all, I just merely stopped the way of our boat—we couldn't back that barge—we would have slewed her right around."

There is testimony in the record to show that if the tug had gone straight on instead of backing, the boats would have gone clear of each other. The collision we think was due to the backing and to the fact that the McGuirl had shaved in too close upon the Stefano.

Decree affirmed.